USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/26/2026__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TORI SAUNDERS,

                              Plaintiff,

        -against-

H.O. CORLEY EDWARD and D.
VENETTOZZI,

                              Defendants.

7:23 CV 6370 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Tori Saunders ("Plaintiff" or "Saunders"), who was previously incarcerated at Green Haven Correctional Facility, commenced this *pro se* action pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983"). *See* Complaint, ECF No. 1. Plaintiff asserts claims against Hearing Officer Edward Corley ("Defendant Corley")[1] and Director of Special Housing Don Venettozzi ("Defendant Venettozzi") (together, "Defendants"), alleging violations of his rights under the Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution. *See id*. at ¶¶ 22–36. Defendants have moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendants' motion to dismiss is GRANTED.

## FACTUAL BACKROUND

On June 8th, 2020, Plaintiff was "participating in recreation" in the "G" and "H" yard at Green Haven Correctional Facility when he "observed a commotion." Compl. at ¶ 10. Several correctional officers "ran towards [Plaintiff] and several other inmates" and told Plaintiff to place his hands on the wall, at which point he was put in mechanical restraints and placed into the Special Housing Unit. *Id.*

---

[1] Sued herein as "Corley Edward."

1

The following day, Plaintiff was served with a misbehavior report accusing him of "assault, fighting, and weapon possession." *Id*. Corrections Officer Tragis ("C.O. Tragis"), who observed the altercation, wrote the report. *Id*. The report alleged that Plaintiff was observed fighting with inmate Oshapha Murray ("Murray") in the G and H yard bathroom. *Id*. The report further alleged that Plaintiff was observed making stabbing motions and dropping a weapon, which inmate Murray picked up and threw in the toilet. *Id.* Plaintiff was charged with violent conduct, assault on an inmate, fighting, disorderly conduct, violent conduct, refusing a direct order, possession of a weapon, and possession of contraband. *Id.*, Ex. B.

On June 24, 2020, Plaintiff attended a Tier III disciplinary hearing. *Id*. ¶ 12. Defendant Corley presided over the hearing. *Id*. Plaintiff called inmate Murray, C.O. Tragis, and one Sergeant Polanco as witnesses. *Id*. Inmate Murray allegedly denied having any altercation with Plaintiff. *Id*. C.O. Tragis allegedly testified that he could not recall Plaintiff's hairstyle and clothing on the date of the incident, that none of the retained video footage depicted Plaintiff, that he did not know whether "it was possible to misidentify" Plaintiff, and that he did not think he needed to provide the responding officers with identifying information because "when the response team arrived, Plaintiff was seen walking in the vicinity." *Id*. ¶¶ 13–14. Plaintiff also claims that he objected to C.O. Tragis being allowed to read from the reports on Defendant Corley's desk during the hearing, which Defendant Corley allowed. *Id*. ¶ 14. Sergeant Polanco was allegedly asked whether he recalled the underlying altercation, whether Murray told him he was "assaulted but was however, defending himself," and whether he recalled writing in the unusual incident report he generated that he observed Plaintiff exiting the bathroom. *Id.* ¶ 15. Plaintiff claims that Sergeant Polanco either answered in the negative or that he did not recall, but did not clarify which answers were given to which questions. *Id.* Plaintiff also claims that he received body camera footage pursuant

2

to a Freedom of Information Law request, despite being told by Defendant Corley and a Sergeant McCray that no such video existed. *Id.* ¶ 16.

On July 16, 2020, Defendant Corley found Plaintiff guilty on all charges and issued Plaintiff "a penalty of 240-days confinement as well as loss of privileges, and 8-month recommended loss of good time." *Id.* ¶ 17. Plaintiff claims that the evidence presented at the hearing "did not provide an adequate basis" for Defendant Corley's guilty finding and appealed the decision to Defendant Venettozzi, Acting Director of Special Housing Unit, on July 17, 2020. *Id.* ¶¶ 18–19. On August 10, 2020, Defendant Venettozzi affirmed Defendant Corley's decision and Plaintiff was notified two days later. *Id.* ¶ 20.

On late August 2020 or early September 2020, Plaintiff commenced an Article 78 proceeding in the Supreme Court of the County of Albany. (Def's Ex. A.) The Article 78 proceeding was transferred to the Appellate Division Third Department of the State of New York ("Third Department"), following which Plaintiff filed a supplemental brief on October 27, 2021 that was nearly identical to the original Article 78 Petition. *See id.*; Compl., Ex. E. In his Article 78 Petition, Plaintiff alleged that his right to due process was violated on four grounds: (1) when he was "denied access" to the complete unusual incident report; (2) "when he was improperly denied adequate employee assistance in his disciplinary hearing;" (3) when C.O. Tragis was "repeatedly allowed to feign non-recalled elements" of the misbehavior report; and (4) when Defendant Corley found Plaintiff guilty of the charged offenses, despite a lack of substantial evidence to support them. *See id.* The respondent replied to Plaintiff's brief on April 4, 2022, resubmitting the majority of records previously submitted to the lower court prior to the transfer. (Def's Ex. C, B.)

On July 28, 2022, after examining the record, the Third Department annulled Plaintiff's Tier III determination, finding that Plaintiff was "denied relevant documentary evidence" when his employee assistant provided him the incorrect unusual incident report. *See Saunders v. Annucci*, 207 A.D.3d 1014, 1015 (3d Dep't 2022). The Third Department also found that all charges except for refusing a direct order, which it dismissed, were "supported by substantial evidence." *Id.*

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on the instant action on July 21, 2023. *See* Complaint. Defendants moved to dismiss Plaintiff's Complaint and filed their Memorandum of Law. *See* ECF Nos. 38–39. Plaintiff failed to file any papers in opposition to Defendants' motion.

## LEGAL STANDARD

### I.    Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by

4

reference ... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, where, as here, a litigant is *pro se*, the Court is empowered to consider "new facts raised in opposition papers to the extent they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). A Court may consider new claims appearing for the first time in the briefing if the claims "could have been asserted based on the facts alleged in the complaint." *Vlad-Berindan v.MTA New York City Transit*, No. 14-cv-675, 2014 WL 6982929, at *6 (S.D.N.Y.2014). Further, where plaintiff proceeds *pro se*, the court must "construe [] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Corbett v. Annucci*, 2018 U.S. Dist. LEXIS 24291, 2018 WL 919832, at *2 (S.D.N.Y Feb. 12, 2018) (alterations in original). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.'" *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## II.    Section 1983

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself

a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep' t*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.")

## DISCUSSION

Plaintiff alleges Defendant Corley violated his Fifth and Fourteenth Amendment right to due process by failing to provide him with "relevant documentary evidence" at his Tier III hearing. (Compl. ¶ 23.) Further, Plaintiff alleges Defendant Corley's decision to place him in special housing amounted to cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* ¶ 28.) Finally, Plaintiff alleges Defendant Venettozzi violated his Fourteenth Amendment right to due process by affirming Defendant Corley's determination and punishments. (*Id.* ¶¶ 31–32.) The Court address Plaintiff's claims below.

## I.  Claims Against Defendant Corley

### A.  Plaintiff's Due Process Claims

Plaintiff alleges Defendant Corley violated his Fifth and Fourteenth Amendment right to due process by failing to provide him with "relevant documentary evidence" at his Tier III hearing. (*Id.* ¶ 23.) Defendant Corley argues that Plaintiff is collaterally estopped from asserting due process violations against him. *See* Def. Mem. of L. at 5–7. "Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give a prior state court judgment the same preclusive effect that such a judgment would be given in the courts of the state from which the judgment emerged. This rule applies to actions brought pursuant to 42 U.S.C. § 1983. We therefore look to New York law to determine what preclusive effect the prior judgment in the Article 78 Proceeding has in this case." *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) (internal citations omitted).

Under New York law, collateral estoppel, or issue preclusion, applies "when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue 'has necessarily been decided in the prior action and is decisive in the present action,' and (2) there has been 'a full and fair opportunity to contest the decision now said to be controlling.'" *Id.* at 59 (quoting *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71 (1969). The burden of "showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion . . . ." *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996). In contrast, "the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion." *Id*. (citing *Schwartz*, 24 N.Y.2d at 73).[2]

---

[2] New York typically grants preclusive effect to both factual and legal issues reviewed in Article 78 proceedings. *See Urena v. Winston*, 16-cv-9708 (NSR), 2018 WL 5113954, *5 (S.D.N.Y. Oct. 19, 2018). Nevertheless, the Second Circuit has questioned whether issue preclusion "should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in an Article 78 proceeding, given the procedural laxity of such prison hearings, and the limited nature of substantial evidence review." *Giakoumelos*, 88 F.3d at 60 (quoting *Colon v. Coughlin*, 58 F.3d 865, 869–70 (2d Cir. 1995), *rev'd on other grounds*). Regardless, all of the issues raised in

As a preliminary matter, the court notes that the issues central to Plaintiff's due process claims against Defendant Corley in this action are nearly identical to the issues presented in his Article 78 Petition that were reviewed and decided by the Third Department. Specifically, Plaintiff's due process claims in this action are premised on Defendant Corley not providing him "relevant documentary evidence." (Compl. ¶¶ 23–25.) Similarly, in his Article 78 Petition, Plaintiff alleged that he was "denied his fundamental right to due process" when, among other things, he was "denied access to [the] complete unusual incident report" and when Defendant Corley found Plaintiff guilty of the charged offenses, despite a lack of substantial evidence to support them. (Compl., Ex. E.) Nonetheless, Defendants fail to establish that Plaintiff's due process claims were "necessarily decided" by the Third Department. The Third Department did not fully reach the merits of Plaintiff's due process claims in the Article 78 proceeding. *See Saunders*, 207 A.D. 3d at 1015. Rather, in a brief two-page opinion, the Third Department held only that Plaintiff was "denied relevant documentary evidence" when he was not provided the correct unusual incident report; determined that the charge of refusing a direct order was unsupported by substantial evidence and dismissed it; and annulled the hearing determination, ordering a new hearing on the remaining charges—despite concluding that those charges were supported by substantial evidence. *Id.* Arguably, one plausible reading of the Third Department's decision to annul the determination and order a new hearing, notwithstanding its finding that most charges were supported by substantial evidence, is that the court recognized a procedural defect implicating Plaintiff's right to due process. Nevertheless, the court did not expressly analyze or

---

Plaintiff's complaint are issues of law, not fact. Thus, the Court does not have to consider whether any factual issues reviewed in the Article 78 proceeding should be granted preclusive effect.

adjudicate Plaintiff's due process claims. Accordingly, because the Third Department did not "necessarily decide" Plaintiff's due process claims, this Court must do so.

As an initial matter, Plaintiff's due process claim brought pursuant to the Fifth Amendment must be dismissed as a matter of law as Plaintiff was in state, not federal, custody. *See Smith v. New York State Dep't of Corr. Servs.*, No. 15-CV-3455 (NSR), 2022 WL 17345055, at *4 (S.D.N.Y. Nov. 30, 2022) ("Plaintiff's Fifth Amendment claim does not apply here as there are no federal actors being sued."). Accordingly, we analyze Plaintiff's due process claims pursuant to the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

### 1. Liberty Interest

A prisoner's liberty interest may be implicated by disciplinary action "only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). To determine whether an inmate has endured an "atypical and significant hardship," courts consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" as well as the duration of the segregated confinement. *Davis,* 576 F.3d at 133.

The Second Circuit has declined to adopt bright-line rules in this area but has established some guidance for the district courts. For example, confinements "of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis*, 576 F.3d at 133 (citing *Colon v. Howard*, 215 F. 3d 227, 231–231 & n.5 (2d Cir. 2000)). In contrast, confinements longer than 305 days, even under normal special housing conditions, generally raise a liberty interest. *See Palmer v. Richards*, 364

F.3d 60, 65. Confinements between 101 and 305 days, such as Plaintiff's 240-day confinement, deemed "intermediate" confinements by the Second Circuit, "may trigger a protected liberty interest, depending on the specific conditions of confinement." *Gonzalez v. Hasty*, 802 F.3d 212, 223 (2d Cir. 2015). For such intermediate confinements, the Second Circuit requires the development of a detailed factual record before a district court can "properly term the confinement atypical or insignificant." *Sims v. Artuz*, 230 F.2d 14, 23 (2d Cir. 2000). "In those situations, a district court must make a fact-intensive inquiry examining the actual circumstances of SHU confinement in the case before it without relying on its familiarity with SHU conditions in previous cases." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (internal citations omitted).

Here, Plaintiff states that the confinement was "very unlawful and intended to restrict Plaintiff (sic) person from otherwise (sic) privileges enjoyed by all other inmate's (sic) which include commissary, visit's (sic), program's (sic) packages, religious services, and all other activities which is not associated to cruel and unusual punishment…" (Compl. ¶ 28.) Even affording Plaintiff's Complaint the liberal construction to which *pro se* litigants are entitled, Plaintiff fails to plead facts permitting the Court to infer that his confinement was "atypical" of special housing confinement. He does not allege, for example, that his conditions materially differed from those ordinarily imposed in special housing, that he was subjected to more severe restrictions than similarly situated inmates, or that the duration of his confinement exceeded that typically imposed on inmates for comparable infractions.

Without a detailed factual record on the conditions of Plaintiff's confinement, the sole issue before the Court is whether Plaintiff's confinement to special housing for 240 days, on its own, implicates a protected liberty interest. This Court previously has held that confinement for an intermediate period, on its own, does not implicate a protected liberty interest. *See, e.g., Colson v.*

10

*Annucci*, No. 23-cv-00654 (NSR), 2024 WL 3966451, at *5 (S.D.N.Y. Aug. 27, 2024) ("Even if this Court were to take Plaintiff's allegation in his opposition that he spent 135 days in confinement until January 28, 2020 as true, the duration still would not trigger a protected liberty interest since Plaintiff does not show he suffered 'atypical and significant hardship.'"); *White v. Gutwein*, No. 20-cv-4532 (NSR), 2022 WL 2987554, at *8 (S.D.N.Y. July 28, 2022) ("As discussed, Plaintiff cannot rely on the SHU sentence's duration alone to establish that it constituted an atypical, significant deprivation of Plaintiff's liberty under Second Circuit jurisprudence."). Other courts in this district have reached the opposite conclusion. *See, e.g., Mena v. Gutwein*, No. 19-cv-3882 (VB), 2020 WL 5370708, at *5 (S.D.N.Y. Sept. 8, 2020) (declining to dismiss inmate's due process claims for failure to state a liberty interest when inmate plead only that he was kept in special housing for 181 days); *Thomas v. Calero*, 824 F.Supp.2d 488, 500–01 (S.D.N.Y. 2011) ("In the present matter, plaintiff has not alleged that the conditions of his confinement differed from normal SHU circumstances. Plaintiff simply alleges that he was…actually confined in SHU for 291 days. Looking to *Palmer* and considering plaintiff's status as a *pro se* litigant, we conclude that plaintiff's confinement in SHU for 291 days is sufficient, for pleading purposes, to implicate a liberty interest."). And in yet a third class of cases, this district has assumed the existence of a liberty interest in the absence of a detailed factual record regarding the conditions of the plaintiff's confinement. *See, e.g., Chavez v. Gutwein*, No. 20-cv-343 (KMK), 2021 WL 4248917, at *8 (S.D.N.Y. Sept. 17, 2021) ("Because the factual record regarding Plaintiff's conditions of confinement is underdeveloped…the Court will not dismiss his procedural due process claim on this basis. Instead, the court assumes without deciding that Plaintiff's SHU confinement 'implicates a protected liberty interest,' and will turn to consider whether he has alleged a deprivation of sufficient process."); *Abdul-Raheem v. Caffery*, No. 12-cv-6315 (JPO), 2015 WL

11

667528, at *5 (S.D.N.Y. Feb. 17, 2015) (assuming without deciding that confinement to special housing for an uncertain period of time where plaintiff alleged his confinement included loss of packages, commissary, and phone privileges implicated a protected liberty interest).

The Court concludes that the third approach—assuming the existence of a protected liberty interest in the absence of a fully developed factual record—is most appropriate here. Accordingly, given the limited record concerning the conditions of Plaintiff's intermediate confinement and in light of Plaintiff's pro se status, the Court will assume, without deciding, that a protected liberty interest exists and proceed to the next step of the due process analysis.

### 2. Constitutionally Sufficient Due Process

The Court construes Plaintiff's Complaint to raise a Fourteenth Amendment procedural due process claim based on alleged deficiencies in Plaintiff's Tier III disciplinary proceeding, Defendant Corley's guilty determination, and Defendant Venettozzi's subsequent affirmance. "To state a procedural due process claim, Plaintiff must allege not only that he was deprived of a liberty interest, but also that he was so deprived *as a result of insufficient process*." *Chavez*, 2021 WL 4248917, at *8 (citing *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004)). "[I]t has long been clear that inmates retain due process rights in prison disciplinary hearings." *Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir.2003). "Certain due process protections therefore apply where disciplinary proceedings may lead to the loss of good time credit… or would subject an inmate to solitary confinement in the SHU." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (internal citations omitted). A disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Id.* (citing *Kalwasinski v.*

12

*Morse,* 201 F.3d 103, 108 (2d Cir.1999)). In *Superintendent v. Hill*, the Supreme Court held that "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by *some evidence* in the record." 472 U.S. 445, 454 (1985). "Although the Court in *Hill* stated that the question is whether there is 'any evidence' that 'could' support the disciplinary decision, [the Second Circuit] has not construed the phrase 'any evidence' literally. Rather, we have looked to see whether there was "reliable evidence" of the inmate's guilt." *Luna*, 356 F.3d at 488 (internal citations omitted).

Here, Plaintiff's hearing complied with the due process requirements outlined above. Plaintiff received written notice of the disciplinary charges in the form of a misbehavior report more than two weeks before the commencement of his hearing. (Compl. ¶ 11.) Plaintiff concedes that he had the opportunity to present evidence, which he did in the form of calling three witnesses: inmate Murray, C.O. Tragis, and Sergeant Polanco. (*Id.* ¶¶ 12–15.) Finally, Plaintiff received a written Superintendent Hearing Disposition ("Disposition") articulating the disposition, the evidence relied upon in reaching said decision, and the reason for the disposition. (Compl. ¶ 17; *see also* Def's Ex. B, Exhibit I.)[3] Notably, the Disposition notes that Defendant Corley relied upon all of the following to reach a decision: the misbehavior report written by C.O. Tragis; video footage taken on the day and time of the incident in the GH yard bathroom; photos of inmate Murray, Plaintiff, and the recovered weapon; Plaintiff's testimony at the hearing; the testimonies of Sergeant Polanco and C.O. Tragis at the hearing; and the unusual incident report. *See* Def's Ex. B, Exhibit I, p. 3. *Cf. Luna*, 356 F.3d at 487–90 (finding inmate's due process rights were violated when he was found guilty of stabbing another inmate based solely on accusations made by a victim

---

[3] Plaintiff attached only the first page of the Superintendent Hearing Disposition ("Disposition") to his Complaint. However, the respondent in the Article 78 proceeding attached the full 9-page Disposition as an exhibit to his Verified Answer and Return in connection with Plaintiff's Article 78 Petition. *See* Def's Ex. B, Exhibit I.

13

with no "independent credibility assessment"). Nothing in the record supports an inference that Defendant Corley was an unfair or impartial hearing officer. The evidence Defendant Corley relied upon clearly constitutes "reliable evidence" of Plaintiff's guilt that suffices for due process. Defendant Corley's finding of guilt at Plaintiff's Tier III disciplinary hearing is all the more supported by the fact that the Third Department similarly found that all of Plaintiff's charges, other than that of refusing a direct order, were supported by "substantial evidence." *Saunders*, 207 A.D. 3d at 1015.

Nevertheless, in light of Plaintiff's *pro se* status and the Third Department's annulment of Defendant Corley's finding and remittal for a new hearing based on Plaintiff's receipt of an incorrect unusual incident report, the Court will assume, *arguendo*, that Plaintiff has sufficiently made out a due process violation claim. Such violations "are reviewed for harmless error," and thus, "an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." *Jackson v. Prack*, No. 16-CV-7561 (CS), 2019 WL 6119010, at *7 (S.D.N.Y. Nov. 18, 2019); *see also Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (explaining that district courts should evaluate alleged procedural errors in prison disciplinary hearings under a harmless-error standard); *Williams v. Chuttey*, No. 15-CV-1278, 2017 WL 9673722, at *7 (N.D.N.Y. Sept. 5, 2017) ("The Second Circuit has held that prison disciplinary hearings are subject to a harmless error analysis."), *report and recommendation adopted*, 2018 WL 1413049 (N.D.N.Y. Mar. 21, 2018), *aff'd*, 767 F. App'x 105 (2d Cir. 2019). Here, Plaintiff has not alleged how access to the correct incident report would have affected the outcome of the Tier III hearing, or even how his receipt of the incorrect report impacted that outcome at all, particularly in light of the other documentary evidence in the record supporting the determination. As discussed *supra*, Defendant Corley relied on ample reliable evidence—in

14

addition to the correct report—to find Plaintiff guilty of all charges. The Third Department likewise concluded that all charges, except for refusing a direct order, were supported by "substantial evidence."

Accordingly, Plaintiff cannot state a procedural due process claim based on alleged deficiencies in Plaintiff's Tier III disciplinary proceeding—namely, not receiving the correct unusual incident report—and Defendant Corley's guilty determination.

## B.  Eighth Amendment Claim

Plaintiff asserts that Defendant Corley's actions constituted cruel and unusual punishment, in violation of his Eighth Amendment rights. *See* Compl. ¶¶ 26–28. The Eighth Amendment requires prison officials, among other things, to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care…." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An inmate-plaintiff must satisfy a two-pronged test to establish an Eighth Amendment claim against a prison official based on conditions of confinement. First, "the alleged deprivation must, as an objective matter, be 'sufficiently serious'" and, second, "the alleged perpetrator — ordinarily a prison official — must possess a 'sufficiently culpable state of mind.'" *Randle v. Alexander*, 960 F.Supp.2d 457, 470 (S.D.N.Y. 2013) (quoting *Farmer*, 511 U.S. at 834). For the objective prong, an alleged deprivation is sufficiently serious if "a condition of urgency, one that may produce death, degeneration, or extreme pain[,] exists." *Smith v. New York Dep't of Corr. Serv.*, 15-cv-3455 (NSR), 2022 WL 17345055, at *4 (S.D.N.Y. Nov. 30, 2022) (internal quotations omitted). For the subjective prong, "the prison official must 'know[] of and disregard[] an excessive risk to inmate health or safety' that would result from his or her act or omission." *Id.* (quoting *Jones v. Avanzato*, No. 14-cv-2044 (NSR), 2016 WL 183565 at *3 (S.D.N.Y. Jan. 13, 2016)).

Plaintiff fails to satisfy the objective prong of the Eighth Amendment test. Plaintiff's sole basis for his Eighth Amendment claim is that he was confined to special housing as a result of his Tier III hearing and lost certain privileges. (*See* Compl. ¶ 27.) Confinement to special housing, without more, however, is generally insufficient to satisfy the objective prong of the Eighth Amendment test. "[W]hether incarceration in the SHU violates the Eighth Amendment, like the liberty interest inquiry discussed above, depends on the duration and conditions of the confinement." *Hasty*, 802 F.3d 212, 224 (2d Cir. 2015); *see also Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985) ("In this Circuit, we have previously considered the conditions of confinement of SHU prisoners at Green Haven, including outdoor exercise for an hour 'in a small, enclosed yard, open to the sky,' and found these conditions consistent with Eighth Amendment requirements."); *Smith*, 2022 WL 17345055, at *4 ("Plaintiff only establishes that he was put in the SHU for 65 days pursuant to a violation for which he was later exonerated, but that alone is not sufficient to establish the objective element of an Eighth Amendment claim."); *Kingwood v. Coombe*, No. 96 CIV 0432 (HB), 1997 WL 323913, at *7 (S.D.N.Y. June 13, 1997) ("Moreover, absent any allegations that plaintiff's treatment in SHU confinement was in some manner different from unusual SHU treatment, his [Eighth Amendment] claim must fail."). While the Court recognizes that 240 days of confinement in special housing is a prolonged period of time, as discussed *supra*, Plaintiff's "intermediate confinement" of 240 days does not automatically trigger a protected liberty interest, and Plaintiff has failed to plead that his special housing confinement was under conditions that threatened his health or safety, resulted in "death, degeneration, or extreme pain," or otherwise differed in any manner from usual special housing treatment.

Plaintiff also fails to satisfy the subjective prong of the Eighth Amendment test. He does not allege facts plausibly showing that Defendant Corley knew of and disregarded an excessive

16

risk to Plaintiff's health or safety arising from his confinement in special housing. Instead, Plaintiff asserts only that the confinement was "very unlawful and intended to restrict Plaintiff (sic) person from otherwise (sic) privileges enjoyed by all other inmate's (sic) which include commissary, visit's (sic), program's (sic) packages, religious services, and all other activities which is not associated to cruel and unusual punishment…" and conclusorily alleges that "the confinement was unconstitutional…and…[a]mounted to cruel and unusual [p]unishment. . . ." (Compl. ¶¶ 27–28.) Such loss of privileges, however, constitutes the ordinary consequences of special housing confinement and does not, without more, establish the requisite culpable state of mind.

Accordingly, Plaintiff has failed both prongs of the test for a cruel and unusual punishment claim under the Eighth Amendment and such claim against Defendant Corley is dismissed.

## II.    Claims Against Defendant Venettozzi

### A. Personal Involvement

As clarified by the Supreme Court in *Ashcroft v. Iqbal*, "vicarious liability is inapplicable to § 1983 suits." 556 U.S. 662, 676 (2009). Accordingly, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691 (1978)); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting same). Here, Plaintiff has failed to plead any facts demonstrating Defendant Venettozzi's personal involvement in any constitutional violations.

Plaintiff's only allegation against Defendant Venettozzi is that he denied Plaintiff's request for discretionary review. (*See* Compl. ¶¶ 31–32.) Specifically, Plaintiff claims that Defendant Venettozzi "participated directly in the constitutional violation when Plaintiff appealed the Defendants' No. 1 H.O. Corley Edward ruling to [Defendant Venettozzi], Director of Special

17

Housing, citing reversible grounds so that the defendant could correct and cure the illegal act's (sic), but [Defendant Venettozzi] failed to fix the problem." *Id.* ¶ 31. However, denying a request for discretionary review is insufficient to show personal involvement because such conduct, without more, does not amount to a constitutional violation. *See White v. Gutwein*, No. 20CV-4532 (NSR), 2022 WL 2987554, at *10 (S.D.N.Y. July 28, 2022). In *Gutwein*, a case concerning the exact same issue as in the instant motion and also involving Defendant Venettozzi, this Court held that a defendant affirming a hearing officer's conclusions is "nothing more than [the defendant] acting in his supervisory role 'in the prison chain of command'" and "insufficient to establish personal involvement." *Id.* (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). This Court recently upheld the same principle in *Hamlett v. Everly*, a matter also concerning Defendant Venettozzi's alleged personal involvement. No. 21-cv-6663 (NSR), 2024 WL 1892265, at *8 (S.D.N.Y. Apr. 30, 2024) ("[M]erely 'affirming the outcome of a prison hearing [is] not sufficient to establish personal involvement.'") (quoting *Smart v. Annucci,* 2021 WL 260105, at *5 (Jan. 26, 2021)).

Accordingly, because Plaintiff has failed to demonstrate Defendant Venettozzi's personal involvement in any constitutional violation, any claim against Defendant Venettozzi must be dismissed with prejudice.

## III.    Qualified Immunity

Lastly, Defendants argue that they should be afforded protection by qualified immunity. The qualified immunity doctrine protects federal and state officials from suit for acts undertaken in their official capacity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Wyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996); *see Pearson v. Callahan*, 555 U.S. 223,

231 (2009). Since, in the foregoing discussion, the Court finds that Plaintiff has failed to state a claim for a violation of Plaintiff's constitutional rights, the Court does not need to address the issue of qualified immunity presented before it.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The claims against Defendant Corley are dismissed without prejudice and the claims against Defendant Venettozzi are dismissed with prejudice.

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and quotation marks omitted). However, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006). Plaintiff is granted leave to amend and may replead the claims that were dismissed without prejudice (e.g., the claims against Defendant Corley).

If he chooses to do so, Plaintiff will have until April 3, 2026 to file an Amended Complaint consistent with this Opinion and Order. Plaintiff is advised that the Amended Complaint will replace, not supplement, his Complaint, so any claims he wants to pursue must be included in or attached to the Amended Complaint. An Amended Complaint Form is attached to this Order. Defendants are then directed to answer or otherwise respond by May 8, 2026. If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse

19

such a failure, the claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 38 and Defendant Venettozzi from this action. The Clerk of Court is further directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

SO ORDERED.

Dated: February 26, 2026
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.

20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

**COMPLAINT**

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name            Middle Initial            Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                    State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

Page 2

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

## VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6